UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 3:17-cv-00147-RLY-MPB |
| THE VILLAGE AT HAMILTON POINTE LLC,   d/b/a HAMILTON POINTE HEALTH AND REHABILITATION CENTER,   d/b/a HAMILTON POINTE ASSISTED LIVING CENTER   d/b/a THE COTTAGES AT HAMILTON POINTE, and TENDER LOVING CARE MANAGEMENT INC.,   d/b/a TLC MANAGEMENT, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ENTRY ON TENDER LOVING CARE MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Equal Employment Opportunity Commission ("EEOC"), filed a Complaint alleging the Defendants herein, The Village at Hamilton Pointe, LLC d/b/a Hamilton Pointe Health and Rehabilitation Center, d/b/a Hamilton Pointe Assisted Living Center, d/b/a The Cottages at Hamilton Pointe, and Tender Loving Care Management, Inc., d/b/a TLC Management ("TLC"), violated Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 by discriminating against African American employees ("Class Members"). TLC now moves for summary judgment, arguing it

1

cannot be liable under Title VII because it is not the Class Members' joint employer. The court agrees. TCL's motion is therefore **GRANTED**.

I. Background

   A. The Village at Hamilton Pointe

The Village at Hamilton Pointe is an Indiana limited liability company that operates a long-term care facility in Newburgh, Indiana. (Filing No. 94-2, Affirmation of Shawn Cates ("Cates Aff." ¶ 6)). Hamilton Pointe is privately held, and no corporations, including TLC, own a membership interest in Hamilton Pointe. (Filing No. 94-1, Affirmation of Gary Ott a Managing Member of Hamilton Pointe ("Hamilton Pointe Aff.") ¶ 6 & Ex. A at 6). Its managing members are Gary Ott, Ryan Ott, Dwight Ott, Cullen Gibson, and Shawn Cates. (Filing No. 110-1 Deposition of Gary Ott ("Ott Dep.") at 50-51, 54-55 & Dep. Ex. 4). Gary Ott testified there are other members of Hamilton Pointe, but he could not remember their names. (Ott Dep. at 179).

The administrator is employed by Hamilton Pointe and has hiring authority for and supervises several departmental managers, also employed by Hamilton Pointe. (Cates Aff. ¶¶ 4, 7). Departmental managers—including a dietary manager, director of nursing, and housekeeping supervisor—have hiring authority for and supervise their respective staff members. (*Id.* ¶ 7). Dietary aides, dietary cooks, and the assistant dietary managers report to the dietary manager. Certified nursing assistants (CNAs), qualified medical assistants (QMAs), and nurses (LPNs and RNs) ultimately report to the director of nursing. (*Id.* ¶¶ 8-9).

Hamilton Pointe's administrator is responsible for the management decisions at Hamilton Pointe, and oversees expenditures, accounting and budgeting, and human resources. (*Id.* ¶ 7). Hamilton Pointe's department managers supervise and control the day-to-day tasks of providing direct patient care to Hamilton Pointe's residents, including scheduling, assigning tasks, and evaluating the performance of CNAs, QMAs, LPNs, RNs, dietary aides, dietary cooks, assistant dietary managers, housekeepers, and laundry aides. (*Id.* ¶¶ 7-9).

The Class Members all work or have worked for Hamilton Pointe and were on its payroll. (*Id.* ¶ 6). Thirty (30) Class Members are or were CNAs; four (4) Class Members were QMAs; five (5) Class Members were staff nurses - LPNs; one (1) Class Member was a staff nurse - RN; seven (7) Class Members worked in the dietary department; four (4) Class Members worked in housekeeping; one (1) Class Member was a laundry aide. None of these positions, and thus none of the individual Class Members, report to anyone outside of Hamilton Pointe, and all these positions are based in Hamilton Pointe's Newburgh, Indiana facility. (*Id.* ¶ 6-7, 9).

**B.    TLC**

TLC is an Indiana corporation with its principal office located in Marion, Indiana. (Filing No. 94-3, Affirmation of Gary Ott as President of TLC ("TLC Aff."), Ex. B at 5). TLC, like Hamilton Pointe, is owned and operated by Gary Ott, Ryan Ott, Dwight Ott, and Cullen Gibson. (Ott Dep. at 13-15, 33, 50-55, 87 & Dep. Exs. 3, 5).

TLC provides management consulting and outsourcing solutions to client health care facilities like Hamilton Pointe. (TLC Aff. ¶¶ 7, 8, 14-20, 24-26; Cates Aff., Ex. J).

3

TLC's services include accounting, budgeting, information technology, state and federal regulatory compliance, and human resource services. (TLC Aff. ¶¶ 24-26; Cates Aff., Ex. J). Outsourcing solutions include information technology, payroll and benefit processing, policy forms and samples, and a hotline service. (TLC Aff. ¶¶ 15-18). TLC's services are offered pursuant to contract at a predetermined rate. (Cates Aff. ¶ 12 & Ex. J; TLC Aff. ¶ 22).

### C. TLC's Relationship with Hamilton Pointe

#### 1. Management Agreement

Pursuant to the Management Agreement signed by TLC and Hamilton Pointe on September 14, 2012, TLC agreed to provide the services set forth above to Hamilton Pointe as an independent contractor. (Cates Aff., Ex. J, ¶¶ 1, 6). Specifically, TLC agreed to provide:

> Management support which includes monthly management meetings with the Administrator and providing financial controller support, computer support, and accounting support for accounts receivable, accounts payable, and payroll. Monthly budgets, in addition to the profit and loss statements, will be generated.

(*Id.* ¶ 1). TLC's outsourcing solutions include IT services, such as online applications and an intranet system, and a centralized hotline service which processes, investigates, and disseminates complaints to Hamilton Pointe. (Ott Dep. at 169 (stating TLC investigates complaints called into the hotline or called to their attention by letter); TLC Aff. ¶ 26; Cates Aff., Ex. J). TLC also offers payroll processing and a group-benefits plan. (TLC Aff. ¶¶ 16, 20). Hamilton Pointe participates in these programs but is solely

4

responsible for the costs of payroll and any employee benefits expenses. (Cates Aff. ¶¶ 6, 11; TLC Aff. ¶¶ 8, 20, 27).

## 2. Interaction Between TLC and Hamilton Pointe

TLC assigned Regional Director of Operations, Phil Heer, to work with Hamilton Pointe. (TLC Aff. ¶ 25). Heer supports Cates on operations, budgeting, accounting services, and provides management advice such as financial best practices and risk assessment. (*Id.* ¶ 24; *see also* Cates Aff., Ex. J).

As for salaries, TLC sets the wage scale for Hamilton Pointe employees based on market research and market surveys. (Filing No. 110-5, Deposition of Cullen Gibson at 90-91). Cates and former Hamilton Pointe administrator, Christina Malvern, testified they were given the latitude to pay within the pay scale. (Filing No. 110-13, Deposition of Shawn Cates ("Cates Dep.") at 84-85; Filing No. 110-14, Declaration of Christina Malvern ("Malvern Decl.") ¶ 9). Cates testified he went outside the range to hire a director of sales and marketing, and that Heer gave him "the autonomy to do what [he] wanted to do." (Cates Dep. at 85).

TLC's Director of Human Resources, Matt Doss, consults with Hamilton Pointe on decisions such as hiring and firing Hamilton Pointe employees. (Filing No. 110-17, Deposition of Matthew Doss ("Doss Dep.") at 14; TLC Aff. ¶ 15). He does not make the ultimate decision whether to hire or fire Hamilton Pointe employees, however. (Doss Dep. at 14).

TLC's Chief Nursing Officer, Teresa Wallace, provides health care compliance advice and consulting to Hamilton Pointe. (TLC Aff. ¶ 27; Gibson Dep. at 54-55). She

5

"oversees nursing care operations," including medical supplies, trainings, and staffing level, which are subject to federal regulation. (Gibson Dep. at 56). She does not supervise or evaluate Hamilton Pointe's director of nursing; the administrator performs those functions. (*Id.* at 55).

TLC does not have the authority to hire, fire, or discipline any of the Class Members. (Cates Aff. ¶ 14; TLC Aff. ¶¶ 14, 26). TLC does not manage or control the scheduling or assignment of Class Members. (Cates Aff. ¶¶ 6, 9, 12; TLC Aff. ¶¶ 9, 12, 14). Class Members are not and never were on TLC's payroll. (Cates Aff. ¶ 6; TLC Aff. ¶ 28).

None of TLC's consultants maintain an office at Hamilton Pointe; they are based in Marion, Indiana. (TLC Aff. ¶ 8). They visit Hamilton Pointe's facility on a monthly or as-needed basis. (*Id.*; Cates Aff., Ex. J).

All other facts necessary to a resolution of this motion will be addressed in the Discussion Section.

## II. Discussion

Under Title VII, an employer[1] may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1). Thus, in order to bring a Title VII

---

[1] Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[.]" 42 U.S.C. § 2000e(b). And an "employee" is "an individual employed by an employer." 42 U.S.C. § 2000e(f). It is undisputed that Hamilton Pointe and TLC are "employers" and the Class Members are "employees."

6

claim against TLC, the EEOC must establish the existence of an employer-employee relationship between TLC and the Class Members. *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991).

It is undisputed that TLC was not the Class Members' direct employer. "For Title VII purposes, however, a plaintiff can have more than one employer." *Frey v. Coleman*, 903 F.3d 671, 676 (7th Cir. 2018) (citing *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015)). The EEOC contends that TLC had sufficient control over the Class Members to be considered their "joint employer." In the alternative, the EEOC contends that TLC has forfeited its corporate status and is, therefore, a proper defendant. *Worth v. Tyler*, 276 F.3d 249, 259-60 (7th Cir. 2001).

### A. Joint Employment

In determining whether an entity is an indirect or joint employer, the Seventh Circuit employs a five-factor test:

> (1) the extent of the [purported] employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Knight*, 950 F.2d at 378-79 (7th Cir. 1991). In determining the existence of an employer-employee relationship, "the employer's right to control is the 'most important' consideration." *Love*, 779 F.3d at 703. Within this factor, the power to hire and fire is a "key power." *Nischan v. Stratosphere Quality, LLC*, 885 F.3d 922 (7th Cir. 2017). The

7

EEOC did not address factors (2) and (5); therefore, only factors (1), (3), and (4) will be addressed.

### 1. Control and Supervision

The evidence establishes that Hamilton Pointe—not TLC—had the authority to hire, fire, and discipline Hamilton Pointe employees, including the Class Members. (Cates Aff. ¶ 14; TLC Aff. ¶¶ 14, 26). The EEOC attempts to create an issue of fact by arguing that Hamilton Pointe's administrator, Shawn Cates, was hired by TLC's Cullen Gibson. To the extent this is true, the fact is immaterial. The *Knight* test centers on the employee who is the victim of the employer's alleged discriminatory conduct. The alleged victims here are the Class Members and Cates is not one of them.

As to other avenues of "control" over Hamilton Pointe's employees, the EEOC posits that Hamilton Pointe's administrators needed TLC's "approval" to fire or lay off employees. (*See* Malvern Decl. ¶ 11 ("I could not terminate any employee without approval from TLC's Human Resources department. . . . I also needed TLC approval to lay-off employees.")). The relationship between TLC and Hamilton Pointe on this issue is best addressed by the testimony of Gary Ott:

> [Vice President of HR], Steve Ronilo, I don't think, has the authority [to stop a termination]. But Steven Ronilo would be giving his advice on, "Have you done everything by the book as far as all the disciplinary procedures?" And he would kind of consult with the administrator and say, "Listen, you haven't given the first warning, the second warning, the third warning," you know, whatever it is. So he would tell them that, "You do not have a very good case to be terminating this person at this point." So he would advise them not to, "until you get all that documentation right." But it's still the administrator's decision because the Administrator is the one that's finally responsible and runs the show.

(Ott Dep. at 100). In other words, TLC gave Hamilton Pointe administrators its input and recommendation on these types of employment decisions; it did not make them or otherwise control their outcome. (*See* Doss Dep. at 14 (noting he did not make hiring and firing decisions; he just gave his "general impression" and "consultation")). Under Seventh Circuit law, providing only input and recommendations does not establish the right to control an employee. *Nischan*, 865 F.3d at 929 (holding Chrysler employee did not have the power to fire plaintiff, who worked for Stratosphere, because he "could provide only input and recommendations regarding Stratosphere's employees").

The EEOC's arguments regarding TLC's control over Hamilton Pointe's salaries and budget are similarly misplaced. As part of the budget process, TLC conducted market research and wage surveys to assist the administrators at Hamilton Pointe to determine an appropriate pay rate. (Gibson Dep. at 90-91). Administrators can deviate from the budget and wage scale, but TLC reviews the deviation to help Hamilton stay on budget. (Gibson Dep. at 94-95; Ott Dep. at 176-77).

Regarding regulatory compliance, the EEOC maintains TLC "controlled employee complaints and dispute resolution." (Filing No. 109, Response at 19). But the testimony on this issue does not support that conclusion. According to TLC's Steve Ronilo:

> So if [Hamilton] jump[s] too soon, and they take action against an employee that they shouldn't take, we're polite and respectful about it, but we certainly let them know that they did the wrong thing. Don't do this again. This is serious stuff and we're going to fix it.

(Deposition of Steven Ronilo at 40). This service, as well as the other services TLC performed—auditing, accounting, hotline service, compliance, and the like—are part of

9

the consulting services it provides to Hamilton Pointe pursuant to contract. The provision of these services does not create joint employment. *See Papa v. Katy Indus., Inc.*, 166 F.3d 937, 942 (7th Cir. 1999) (hiring other firms to perform services such as payroll does not subject those firms "to the antidiscrimination laws").

As demonstrated by the record, the consulting services performed by TLC were on an organizational level. TLC had little interaction with Class Members; it did not set their schedules, control their day-to-day activities, or have the power to hire or fire them. TLC's lack of workforce control weighs in TLC's favor.

### 2. Costs of Operation

Hamilton Pointe is responsible for funding its employees' paychecks. (Cates Aff. ¶ 6). The EEOC does not dispute that fact; rather, it argues that TLC assumed responsibility for other costs of operation, including accounting and payroll services, IT services, and maintenance services for the facilities it manages. (Filing No. 128-2, Sworn Administrative Testimony of Gary Ott ("Ott Sworn Admin. Test.") at 18-19; Ott Dep. at 179-80, 188; Gibson Dep. at 127-28). But the parties' contract provides for accounting and IT services, and Hamilton Pointe pays TLC for those services. (Cates Aff. ¶ 12 & Ex. J). TLC also bills Hamilton Pointe for the building maintenance services it provides. (Ott Dep. at 175).

Regarding the EEOC's arguments concerning budgetary control over Hamilton Pointe's finances, the parties' contract includes budgetary advice. (TLC Aff. ¶ 25). Thus, TLC consults with Hamilton Pointe if, for example, operational costs exceed revenues. (Ott Dep. at 176-77; Hayden Dep. at 39-40). Hamilton Pointe's members are

responsible for recapitalizing Hamilton Pointe; TLC is not. (Ott Dep. at 177-78 (explaining that when there is a capital call, the members have to "kick in the money" or get a loan)).

Because the costs of operation are born by Hamilton Pointe, this factor weighs against finding TLC is the Class Members' joint employer.

### 3. Method and Form of Payment and Benefits

Lastly, the EEOC argues that employee health benefits are "run through TLC" and that open enrollment "is done through" TLC's corporate office. (Response at 13 (citing Malvern Decl. ¶ 9)). TLC does offer a group benefit plan to Hamilton Pointe. (TLC Aff. ¶ 21). Hamilton Pointe—not TLC—pays for those benefits. (*Id.*). And as for the EEOC's suggestion that TLC pays for the college expenses of certain Hamilton Pointe employees, Gary Ott clarified that Hamilton Pointe offers and funds a scholarship program for employees to further their education. TLC does not provide education funding for Hamilton Pointe employees. (Filing No. 128-1, Affirmation of Gary Ott ¶ 4). Accordingly, this factor also favors TLC.

### 4. Conclusion

Based on the five-factor test set forth in *Knight*, the court finds the EEOC has failed to raise a genuine issue of material fact on whether TLC is the Class Members' joint employer. TLC does not have the power to hire or fire the Class Members, supervise their work, create schedules, or otherwise affect the Class Members' employment. Hamilton Pointe is solely responsible for paying the Class Members'

salary, benefits, and other expenses. As such, all three contested *Knight* factors weigh against a finding that TLC is the Class Members' joint employer.

**B.     Veil Piercing**

Next, the EEOC contends TLC forfeited its limited liability under a veil-piercing theory, "whereby corporate formalities are ignored and the actions of one company can accrue to another." *Worth*, 276 F.3d at 260. Veil-piercing is governed by the law of the state in which the companies were incorporated; here, Indiana law. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 364 (7th Cir. 2016). The party seeking to pierce the corporate veil has the burden to prove that "the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice." *Reed v. Reid*, 980 N.E.2d 277, 301 (Ind. 2012) (quoting *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994)).

The EEOC argues that "[i]t is nearly impossible to separate TLC's ownership from Hamilton's." (Response at 26). It also notes that: (1) Hamilton Pointe's administrators are trained at other TLC-managed facilities, (Ott Dep. at 106); (2) Hamilton Pointe adopted employment policies provided[2] by TLC, (Malvern Decl. ¶ 13); and (3) Hamilton Pointe occasionally uses TLC employees when short-staffed, (Ott Dep. at 137; Gibson Dep. at 71-72).

---

[2] This fact is disputed. (Ott Dep. at 118-19 ("I know for a fact that the administrator is involved with [drafting human resource policies for Hamilton Pointe]")).

12

In *Papa*, the Seventh Circuit examined two cases where the employee plaintiffs of the subsidiary corporations argued the parent corporation was a joint employer under Title VII because of the degree of integration between the two companies. 166 F.3d at 939. The parent companies complied with corporate formalities, but fixed the subsidiaries' salaries, centralized payroll, benefits, and pension plans, and integrated computer systems. *Id.* One of the parent companies moved employees back and forth among affiliates while the other forced its subsidiary to shut down a production line, causing layoffs. *Id.* The Court found such integration did not combine employers for purposes of Title VII. *Id.* at 942. It noted that small firms may join a multiemployer pension plan, consult with an outside law firm, and hire an accounting firm to do its payroll. *Id.* And it observed:

> None of these forms of contractual integration would subject tiny employers to the antidiscrimination laws, because the integration is not of affiliated firms. Why should it make a difference if the integration takes the form instead of common ownership, so that the tiny employer gets his pension plan, his legal and financial advice, and his payroll function from his parent corporation . . . rather than from independent contractors?

*Id.* Instead, the Seventh Circuit noted three ways the parent corporation could be found to be jointly liable: (1) where conditions were present to pierce the veil by a creditor; (2) the corporate structure was created for the express purpose of avoiding liability under the antidiscrimination laws; or (3) the parent company directed the discriminatory act, practice, or policy of which the employee of its subsidiary was complaining. *Id.* The Court concluded that there was no suggestion that the companies purposefully attempted to defeat the antidiscrimination laws; there was "no showing that an ordinary creditor of

one of the subsidiaries could pierce the corporate veil"; there was "not suggestion that the parent company "administered the specific personnel policies, or directed, commanded, or undertook the specific personnel actions, of which the plaintiffs are complaining." *Id.*

Here, Hamilton Pointe and TLC are separate legal entities, with separate locations, separate bank accounts, and separate managers. (TLC Aff. ¶ 7; Cates Aff. ¶ 5). TLC does not hold an ownership interest in Hamilton Pointe. (TLC Aff. ¶ 6; Hamilton Pointe Aff. ¶ 6). The integration between TLC and Hamilton Pointe—centralized payroll processing and benefits, budgetary advice, training, and short-term staffing—shows no more integration than in *Papa*. Accordingly, the court finds TLC is not the Class Member's joint employer under a veil-piercing theory.

### III. Conclusion

Based on the designated evidence, TLC is entitled to summary judgment. TLC is not the Class Members' employer and is not a joint employer. Therefore, TLC's Motion for Summary Judgment (Filing No. 92) is **GRANTED**.

**SO ORDERED** this 31st day of March 2020.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.